UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| RONALD V. MILOSEVICH,<br><br>         Plaintiff,<br><br>         v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>         Defendant. | Case No. SA CV 14-01825-DFM<br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff Ronald V. Milosevich ("Plaintiff") appeals from the final decision of the Administrative Law Judge ("ALJ") denying his application for Social Security disability benefits. The Court concludes that the ALJ did not err in assessing Plaintiff's credibility about the severity and limiting effects of his symptoms. The Commissioner's decision is therefore affirmed and the matter is dismissed with prejudice.

## I.

## BACKGROUND

Plaintiff filed an application for Social Security disability insurance benefits on September 1, 2010, alleging disability beginning August 28, 2008.

Administrative Record ("AR") 110-13, 276. After Plaintiff's application was denied, he requested a hearing before an ALJ. AR 99-100, 276. On January 23, 2012, the ALJ issued an unfavorable decision. AR 6-21. After the Appeals Council declined review, AR 1-4, 276, Plaintiff filed an action in this Court, AR 327-32. The parties stipulated to a remand and the Court remanded the case for further proceedings. AR 338-43. Per the parties' stipulation, the ALJ was required to: (1) give further consideration to Plaintiff's residual functional capacity ("RFC") and explain the weight given to the opinion of Plaintiff's treating physician; (2) evaluate Plaintiff's subjective complaints and provide an appropriate rationale; and (3) obtain supplemental evidence from a vocational expert ("VE") to clarify the RFC's effect on Plaintiff's occupational base. See AR 276, 342-43, 353-54.

The same ALJ held a second hearing on May 19, 2014. AR 276, 289-306. The ALJ issued another unfavorable decision on July 17, 2014. AR 273-88. In reaching this decision, the ALJ found that Plaintiff had the severe impairments of degenerative arthritis and osteoarthritis of the left knee and degenerative joint disease of both knees; status post left knee replacement; degenerative changes of the cervical, thoracic, and lumbar spine; right ankle laxity and pain; colitis; obesity; bilateral carpal tunnel syndrome, status post release; and depression. AR 279. The ALJ determined that despite his impairments, Plaintiff had the RFC to perform sedentary work with the following additional limitations:

> [Plaintiff] can lift and carry 10 pounds frequently and occasionally; stand and walk 2 hours in an 8 hour day; sit 6 hours in an 8 hour day with ability to stand and stretch every hour estimated to take 1-3 minutes per hour; no climbing ladders, ropes, or scaffolds; occasionally climb stairs and ramps; occasionally balance, stoop, kneel, crouch and crawl; avoid exposure to unprotected heights

2

and moving dangerous machinery; no forceful gripping[,] grasping or twisting bilaterally; frequently perform fine and gross manipulation bilaterally; and limited to moderately complex tasks of SVP 4 or less.

AR 280.

Based on the VE's testimony, the ALJ found that Plaintiff could not perform his past relevant work as a carpenter. AR 283. Nevertheless, the ALJ ultimately concluded that Plaintiff was not disabled based on the VE's testimony that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. AR 283-84.

## II.
## ISSUE PRESENTED

The parties dispute whether the ALJ erred in failing to properly assess Plaintiff's credibility. See Joint Stipulation ("JS") at 4.

## III.
## DISCUSSION

### A.   Background

At his second hearing, Plaintiff testified that he has carpal tunnel in both wrists. AR 297. He stated, "It's not getting any better, let's put it that way." Id. Plaintiff also testified that his left wrist is worse than his right, perhaps because he recently had surgery on his left wrist, and that it gives him shoulder pain. Id. He stated that he has trouble opening a bottle of apple juice because his "grip's not there" and "sometimes it hurts to twist things." AR 301. Plaintiff further testified that his knee replacement "actually causes [him] worse back pain." AR 297. He testified that he has to alternate between sitting and standing throughout the day because "if [he is] on [his] feet more than 20, 30 minutes [he] get[s] back pain and knee pain and if [he is] sitting down more than 20 or 30 minutes [he] get[s] back pain." AR 299. Plaintiff said that he

3

spends time lying down, but it also causes back pain. Id. He stated, "So pretty much anything I do I'm getting back pain." Id. He described the intensity of his pain as being an eight on a scale of one to ten. Id.

The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR 281. The ALJ went on to explain:

> As for [Plaintiff's] credibility, the undersigned finds [him] not fully credible. First, despite his allegation of disability beginning August 2008, the earliest treatment notes are not dated until September 2010. Second, after the total left knee replacement in November 2010, there is no evidence he saw any physician until October 2013. After that, there is another gap of 5 months until February 2014 as discussed above. Third, after the left knee total replacement, in spite of his assertion of continued debilitating knee pain, x-rays showed normal alignment, and he reported "feeling much better" (Exhibit 9F/12 and 19). And finally, [Plaintiff] claims he has difficulty standing (Exhibit 3E/1). However, at the hearing, [Plaintiff] testified that he is able to do some housework and grocery shopping. In addition, although the claimant testified that he has trouble opening a jar, other than one time consultation in October 2013, there are no follow up appointments nor procedures thereafter. Therefore, the undersigned finds [Plaintiff] only partially credible.

AR 282-83.

///

///

4

**B.   Relevant Law**

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2006)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. Lingenfelter, 504 F.3d at 1036 (citation omitted). "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). To the extent that an individual's claims of functional limitations and restrictions due to alleged symptoms are reasonably consistent with the objective medical evidence and other evidence, the claimant's allegations will be credited. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (explaining 20 C.F.R. § 404.1529(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citing Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (quoting Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the

5

claimant's daily activities. <u>Smolen</u>, 80 F.3d at 1283-84 & n.8. Additionally, "[i]n weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. <u>Smolen</u>, 80 F.3d at 1284.

**C.   <u>Analysis</u>**

Here, the ALJ provided specific reasons for finding that Plaintiff's subjective testimony was not entirely credible, each of which is supported by substantial evidence in the record. First, the ALJ noted that Plaintiff's "longitudinal medical history" was "not consistent with his alleged disability." AR 281. Specifically, the ALJ noted that, despite Plaintiff's allegation of disability beginning August 29, 2008, the earliest treatment notes are not dated until September 2010. AR 281-82 (citing AR 180). Plaintiff counters that the August 2008 onset date was merely "offered in response to a question regarding when he stopped working." JS at 8 (citing AR 123); <u>see also</u> JS at 9 ("The question on the disability report which the onset date is gleaned from is not when did you become so physically disabled that you could not perform any work but simply a question as to when you last worked." (citing AR 210)). However, as the Commissioner points out, <u>see</u> JS at 14, Plaintiff indicated on his disability application that he "became unable to work because of [his] disabling condition on August 29, 2008," AR 112 (capitals removed).

Plaintiff counters that the August 2008 onset date is also consistent with his testimony that he "stopped his 'construction' job in 2008 but returned to school and obtained unemployment in 2009 in conjunction with a hope to go

6

back to work despite pain." JS at 8. At his hearing in 2011, Plaintiff testified
that he applied for unemployment benefits in 2009. AR 58; see also AR 294. In
order to collect unemployment benefits, Plaintiff had to certify that he was
ready, willing, and able to work. See Carmickle v. Comm'r, 533 F.3d 1155,
1161-62 (9th Cir. 2008) (noting that where the claimant holds himself out as
ready and able to work, the "receipt of unemployment benefits can undermine
a claimant's alleged inability to work fulltime") (citing Copeland v. Bowen,
861 F.2d 536, 542 (9th Cir. 1988)). Indeed, Plaintiff acknowledged that he
signed a form stating he was "willing and able to work full-time." AR 58. He
explained that this was because "[he] was still in pain, but [] wanted to go back
to work." Id. However, Plaintiff also testified that he had not applied for any
jobs since he left his construction job. AR 56, 293. And, although he states in
the Joint Stipulation that he "returned to school," Plaintiff testified that he quit
after one semester because of pain and because he had not attended school for
a long time. AR 57. Thus, Plaintiff's failure to seek treatment over a two-year
period, despite his claim that he did not apply for other work during that time
due to pain, was a proper basis for the ALJ's adverse credibility finding. See
Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if
a claimant complains about disabling pain but fails to seek treatment, or fails
to follow prescribed treatment, for the pain, an ALJ may use such failure as a
basis for finding the complaint unjustified or exaggerated.").

The ALJ also noted that after Plaintiff's "total knee replacement in
November 201[1],[1] there is no evidence that he saw any physician until

---

[1] In the quoted portion of the decision, the ALJ incorrectly stated that
the total knee replacement occurred in November 2010. AR 282. However, it
is clear from the decision that the ALJ was aware that the surgery actually took
place in November 2011. See, e.g., AR 281 ("Consequently, on November 14,
2011, the claimant underwent a total knee arthroplasty of the left knee" (citing

7

October 2013." AR 282-83. Plaintiff concedes that "a significant gap in treatment is a viable credibility consideration." JS at 9. Nevertheless, he contends that it was "improper for the ALJ to rely on this gap without first inquiring whether there was any treatment during that period and if not, what was the reason for the lack of treatment." Id. The Court does not agree that the ALJ was obligated to confront Plaintiff.

Plaintiff cites Soto-Olarte v. Holder, 555 F.3d 1089, 1092 (9th Cir. 2009), for the proposition that "once a perceived inconsistency in the oral testimony arises, the ALJ must confront the claimant with the inconsistency and if an explanation is made address that explanation." JS at 9. Soto-Olarte held that an immigration judge cannot base an adverse credibility determination on perceived inconsistencies without first asking the asylum applicant about the discrepancies and giving him an opportunity to reconcile them. See 555 F.3d at 1092. "[D]istrict courts within the Ninth Circuit have rejected the contention that the rule articulated in Solo-Olarte applies in the social security disability context." Mulay v. Colvin, No. 13-2045, 2015 WL 1823261, at *6 (C.D. Cal. Apr. 22, 2015) (collecting cases). Similarly, Plaintiff's reliance on Rule 613 of the Federal Rules of Evidence, see JS at 9, is not persuasive. It is well-established that "[t]he Federal Rules of Evidence do not apply to the admission of evidence in Social Security administrative proceedings." Bayliss v. Barnhart, 427 F.3d 1211, 1218 n.4 (9th Cir. 2005) (citations omitted).

All of the other cases cited by Plaintiff in support of his contention that the ALJ had a duty to elicit an explanation from Plaintiff regarding gaps in treatment are inapposite. See JS at 9-10. In Higbee v. Sullivan, 975 F.2d 558,

---

AR 258)); AR 282 ("After the left knee total replacement, there is a gap in treatment between November 2011 and October 2013"). The fact that the gap in treatment was nearly two years rather than three years appears to have been recognized by the ALJ, and in any event, does not alter this Court's analysis.

8

561 (9th Cir. 1992), the Ninth Circuit explained that the ALJ's duty to fully develop the record is heightened "where the claimant is not represented." Similarly, in <u>Key v. Heckler</u>, 754 F.2d 1545, 1551 (9th Cir. 1985), the Ninth Circuit explained, "When a claimant appears at a hearing without counsel, the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" (quoting <u>Cox v. Califano</u>, 587 F.2d 988, 991 (9th Cir. 1978)). In <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983), the Ninth Circuit held that the ALJ failed to assume his duty to fully develop the record by proceeding without a hearing. Here, by contrast, the ALJ held two hearings at which Plaintiff was represented by counsel. <u>See</u> AR 53, 291.

Next, the ALJ noted that Plaintiff reported he was "feeling much better" after his knee replacement surgery, and that post-operative x-rays showed normal alignment. AR 283. Plaintiff contends that this was not a proper basis for the ALJ to discount his complaints of disabling knee pain because the x-ray was performed on the same day as the surgery and his statement was made less than a week later. JS at 10. However, Plaintiff does not point to any record evidence showing that his knee condition deteriorated or that he was not feeling better after the surgery. As discussed above, Plaintiff did not seek any treatment in the nearly two years following his knee replacement, until October 2013, when he reported on a check-box form that he was experiencing leg and knee pain. AR 483-84. Moreover, his efforts to obtain treatment at that time appear to have been focused on his left wrist. <u>See</u> AR 478-81. And, as noted by the ALJ, Plaintiff did not seek further treatment until February 2014 when he complained of depression to a family physician, AR 494, who ordered x-rays of his left knee, AR 493. AR 282.[2] Accordingly, the ALJ properly

---

[2] As the ALJ acknowledged, the x-rays did reveal "some loose bodies within the joint space" in Plaintiff's left knee. AR 282 (citing AR 493).

9

discounted Plaintiff's credibility on this basis.

The ALJ further noted that Plaintiff's claims that he has difficulty standing were belied by his testimony that "he is able to do some housework and grocery shopping." AR 283. Plaintiff contends that this mischaracterizes his testimony because his "actual testimony is that he does not do housework except for folding his blankets and that when he goes grocery shopping he 'lean[s] on the cart.'" JS at 10 (citing AR 61). The Court disagrees. At the May 19, 2014 hearing, the ALJ referred to Plaintiff's testimony from the December 7, 2011 hearing: "It says you do some housework, fold blankets. No dishes, no laundry. Do grocery shopping. Are you still doing the grocery shopping and leaning on the cart?" AR 296. Plaintiff responded, "Yes." Id. Thus, there is nothing inaccurate about the ALJ's statement that Plaintiff does "some" housework and grocery shopping.

Additionally, at the 2011 hearing, Plaintiff testified that he is able to bathe himself, wash his hair, get dressed, and brush his teeth. AR 61. He stated that he "make[s] sandwiches and stuff," but does not do any cooking. Id. He further stated that there were three stairs going up to the mobile home where he resides and that it is "[d]ifficult, but doable." AR 58. At the 2014 hearing, the ALJ recalled this testimony as follows:

Q    … You're living in a mobile home still?

A    Yes.

Q    And still have the three stairs?

A    Yes.

Q    Have they gotten any easier for you?

A    No.

However, the x-rays also showed that the bone-metal-cement interfaces were normal, the joint space was uniform, the patella was intact with normal position, soft tissues were normal, and there was no joint effusion. AR 493.

10

1    Q      No?

2    A      Not at all.

3    Q      Okay. Because at the time you said they were difficult

4    but doable.

5    A      I'm about ready to put in a ramp.

6  AR 294. The ALJ also asked, "Now are there any things in your day to day

7  life that you need assistance with or help with?" AR 299. Plaintiff responded,

8  "No." AR 300.

9          Thus, the ALJ properly considered Plaintiff's activities of daily living in

10 assessing his credibility. While it is true that "one does not need to be 'utterly

11 incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050

12 (9th Cir. 2001) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)), the

13 extent of Plaintiff's activities support the ALJ's finding that Plaintiff's reports

14 of the severity of his impairments were not fully credible. See Bray v. Comm'r

15 of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009); Curry v. Sullivan,

16 925 F.2d 1127, 1130 (9th Cir. 1991) (finding that the claimant's ability to "take

17 care of her personal needs, prepare easy meals, do light housework, and shop

18 for some groceries . . . may be seen as inconsistent with the presence of a

19 condition which would preclude all work activity") (citing Fair, 885 F.2d at

20 604)).

21         Finally, the ALJ found that, despite Plaintiff's testimony that he has

22 difficulty opening a jar, "other than one time consultation in October 2013,

23 there are no follow up appointments nor procedures thereafter." AR 283.

24 Plaintiff argues that this finding is somehow improper because the ALJ's RFC

25 precluded him from "forceful gripping[,] grasping or twisting bilaterally," AR

26 280, which "is clearly consistent with his testimony of having difficulty

27 opening jars." JS at 11. However, the fact that the ALJ partially believed

28 Plaintiff's testimony does not render her credibility findings erroneous. See AR

11

283 ("Therefore, the undersigned finds the claimant only partially credible."). Indeed, the ALJ noted that an October 2013 examination of Plaintiff's wrist showed decreased range of motion, swelling, and pain with tapping the wrist. AR 282 (citing AR 478, 480). That Plaintiff had difficulty gripping and twisting is consistent with these treatment notes. Accordingly, the ALJ was entitled to incorporate certain limitations described by Plaintiff into the RFC to the extent they were consistent with the medical evidence and to reject others. The ALJ was entitled to believe that Plaintiff had difficultly opening jars and at the same time disbelieve that Plaintiff's wrist pain was as severe as alleged because he sought minimal treatment for his impairments. See Fair, 885 F.2d at 603 (holding that ALJ may consider unexplained or inadequately explained failure to seek treatment when considering the credibility of claimant's testimony); Smolen, 80 F.3d at 1284 (same). Accordingly, the ALJ did not err in discounting Plaintiff's credibility on this basis.

On appellate review, the Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility, which the ALJ did in this case. Smolen, 80 F.3d at 1284. It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); Fair, 885 F.2d at 604.  It was reasonable for the ALJ to rely on all of the reasons stated above, each of which is fully supported by the record, in rejecting Plaintiff's subjective testimony. Reversal is therefore not warranted.

///

///

**IV.**

**CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated:  February 23, 2016

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

13